## Case No. 16,466.

### UNITED STATES v. THIRTY-SEVEN BARRELS OF APPLE BRANDY.

[11 Int. Rev. Rec. 125.]

District Court, D. Kentucky. 1870.

INTERNAL REVENUE — DISTILLERS FROM FRUITS— REGULATIONS PRESCRIBED BY COMMISSIONER — BRANDING OF BARRELS.

1. The 2d section of the act of July 20, 1868 [15 Stat. 125], authorized the commissioner of internal revenue with the approval of the secretary of the treasury, to make the regulation relative to distilleries from fruit, in the circular of April 22, 1869, and in the sense of the act the words "provisions relating to the manufacture of spirits," include provisions touching their removal, and all other provisions which prescribe the duties of distillers.

2. A removal of brandy from the distillery without having cut or burned on the barrels the name of the distiller, the name of the district or serial numbers, is not illegal if all other requirements of the statute have been complied with.

[Disapproved in U. S. v. Ninety-Five Barrels of Distilled Spirits, Case No. 15,890.]

3. Within the meaning of the 96th section of the act of July 20, 1868, it cannot be claimed that a distiller "omits, neglects, or refuses to do or cause to be done anything which the law does not require him but some other person to do."

[Cited in U. S. v. One Thousand Four Hundred and Twelve Gallons of Distilled Spirits, Case No. 15,960.]

4. It is the province of the legislature to declare in explicit terms how far the citizens shall be restrained in the exercise of that power over property ownership gives, and it is the province of the court to apply the rule only to the cases thus explicitly described.

[5. Cited in U. S. v. Two Hundred Barrels of Whisky, 95 U. S. 575, as ruling that section 57 of Act July 20, 1868 [15 Stat. 125], applies only to distilled spirits on hand when the act of 1868 was passed, and such ruling disapproved.]

[This was an information of forfeiture against thirty-seven barrels of apple brandy, Zack Sherley and T. J. Sherley claimants.]

BALLARD, District Judge. This cause, by agreement of parties, has been tried by the court without the intervention of a jury. The information contains three counts, which I shall notice and dispose of in their order.

The first count charges that "the said thirty-seven barrels of apple brandy were found elsewhere than in a distillery or distillery warehouse, not having been removed therefrom according to law." This count is founded upon 36th section of the act entitled "An act imposing taxes on distilled spirits and tobacco, and for other purposes," approved July 20, 1868 (15 Stat. 140), which provides, among other things, "that all distilled spirits found elsewhere than in a distillery or distillery warehouse, not having been removed therefrom according to law, shall be forfeited to the United States." The allegations of this count, and, in fact, the allegations of each count in the information, are controverted by the claimants. By the second section of the above-mentioned act it is provided that "the tax on brandy made from grapes shall be the same and no higher than that upon other distilled spirits, and the commissioner of internal revenue is authorized, with the approval of the secretary of the treasury, to exempt distillers of brandy from apples, peaches, or grapes exclusively from such other of the provisions of this act relating to the manufacture of spirits as in his judgment may seem expedient."

Under the authority of this provision the commissioner, with the approval of the secretary of the treasury, on the 22d April, 1869, issued the following regulation: "Distillers of brandy from apples, peaches, or grapes exclusively, are subject to the same taxes and rates of tax as other distillers. They must register their stills, give notice, and file the bond required of other distillers, but are exempted from the additional requirements imposed upon other distillers, who are not the owners of the fee of the distillery business, and will not be required to furnish the plan required by section 9. The survey must be made as required by section 10. They will be held subject to all the requirements of the law as to assessment, collection, or assignment of the tax due, and providing for the keeping of the books, and for returns, except that instead of making returns tri-monthly, they will make return on Form No. 15, on the first day of each and every month, and the tax on the spirits distilled by them during the period embraced in their returns must be paid at the time of making their return. The tax-paid stamps must be affixed before the spirits are removed from the distillery, and upon such as remain on hand at the time the return is made. They will not be required to provide a bonded warehouse, nor to remove the spirits produced by them from the distillery to a bonded warehouse. nor to erect receiving cisterns in the distillery." The testimony in the case shows, that the spirits in controversy were gauged by an internal revenue gauger at the distillery, that the tax was paid on them at the proper time and the proper "tax-paid stamp" affixed to the head of each barrel before it was removed from the distillery; that none of the barrels, however, were removed to a bonded warehouse; that none of them had branded or cut on them the name of the distiller or of the district in which the spirits were manufactured, and, perhaps, that none had branded or cut on them serial numbers, but that all the other brands are regular. The district attorney intimated, though he did not distinctly contend, that these spirits are forfeited because they were removed from the distillery not into a bonded warehouse, but he relies mainly that they are forfeited because they were removed without having cut or branded on them the name of the distiller, the

district, or the serial number. The regulation of the commissioner expressly exempts distillers of such spirits from the duty of providing bonded warehouses, and also from the duty of removing spirits produced by them from their distilleries to a bonded warehouse. It follows that if this regulation is authorized by law there is no forfeiture on the ground that they were not removed into a bonded warehouse.

I should certainly be reluctant to hold that the spirits were forfeited when they were removed in precise conformity with the regulation of the commissioner, but I do not see how I could escape the result, if the regulation itself is unauthorized. The 30th section of the act requires that all distilled spirits, after being drawn into casks and gauged at the distillery, "be immediately removed into a distillery warehouse." With this provision neither the commissioner of internal revenue nor the secretary of the treasury could dispense unless authorized by law to do so. The 36th section, as we have seen, forfeits all distilled spirits found elsewhere than in a distillery or in a distillery warehouse, which have not been removed therefrom according to law. Now, as these spirits were not found in either a distillery or a distillery warehouse, as they were not removed from the distillery into a distillery warehouse, and as these facts are appropriately alleged in the information, it inevitably follows that the spirits must be condemned, if the above-mentioned regulation is unauthorized, however reluctant I may be to adjudge a condemnation or the district attorney to claim one. But, in my opinion, the authority conferred upon the commissioner by the above-mentioned provision of the second section of the act of 1868, to make the regulation with the approval of the secretary of the treasury, is ample. It is true that he can exempt distillers of brandy from apples, etc., from only such provisions of the act as relate to the manufacture of spirits; and it is true that the provision which requires all distilled spirits to be removed to a distillery warehouse is a provision which, in strictness, relates rather to spirits after they are manufactured than to their manufacture; but I cannot resist the conclusion that all the provisions of the act which relate to spirits do, in the sense of congress, relate to their manufacture. It is the distillers, that is, the manufacturers of brandy, who are to be exempt, and they are to be exempt from such provisions of the act as relate to the manufacture of spirits, that is, such as relate to them as manufacturers of spirits, as the commissioner may deem expedient. There are no provisions of the act which relate directly to the manufacture of spirits. There are none which profess to prescribe the process of distillation. All or most of them relate to the duties of the distiller, commencing with those which appertain to him who intends to be engaged in the business of a distiller, continuing with those enjoined on him whilst he is actually distilling, and ending with those required of him when he has completed the process of distillation. All these provisions relate not only to the manufacturer, but to the "manufacture of spirits," in contradistinction to those which relate to the rectification or compounding of spirits, or to the dealing in them.

It is to be observed, too, that the commissioner is not authorized to exempt distillers of brandy from all of the provisions of the act which relate to the manufacture of spirits. This is plainly implied by the term "other," used in the very sentence in which the authority is found. If he may exempt such distillers from the other provisions of the act relating to the manufacture of spirits, this certainly implies that there is at least one provision of the act relating to the manufacture of spirits from which he cannot exempt them. Now, this provision from which he cannot exempt them, and which is, by the language employed, assumed "to relate to the manufacture of spirits," is that which imposes a tax on them. But manifestly the provision which requires a tax to be paid on spirits no more relates to their manufacture than does the provision which requires their removal from the distillery to the distillery warehouse. And it follows that if, in the sense of the act, the provision which imposes a tax on spirits is a provision relating to their manufacture, there is no violence done to its meaning by holding that the provision touching their removal, and, in fact, all the provisions which in any manner prescribe the duties of distillers, likewise relate to their manufacture. This construction seems also to accord with the supposed policy of the act. Distillers of brandy from apples, peaches, or grapes, are, from the nature of their business, confined in their operations to a small portion of the year. Their business is usually small and such as will not justify the large expenditures which a full compliance with all the provisions of the act imposes on ordinary distillers, such as the having of cistern-rooms and cisterns, warehouses, and the paying of storekeepers. If these are not the provisions of the act from which congress intended to authorize the commissioner to exempt distillers of brandy from fruit, their intention has been wholly misconceived by not only the commissioner, but by the whole public, and we should be at loss to conceive any motive for their legislation.

I come now to the second point relied on by the district attorney. He insists that the spirits are forfeited because the barrels were removed from the distillery without having cut or burned on them the name of the distiller, the name of the district or serial numbers. But I find no provision of the statute which makes it illegal to remove spirits which want these brands from a distillery, and I am not prepared to admit that there is any provision which renders it illegal to remove spirits that want them from a distillery warehouse. We have seen, that distillers of brandy are not required to have either cisterns or distillery

warehouses; and, as there are no provisions of the statute which contemplate the marking of casks containing spirits, except when the spirits are drawn from cisterns into casks, or when the casks are in the distillery warehouse, or when they are removed therefrom, it is not easy to apply any such provisions to brandy at all. All that the regulation of the commissioner requires, as a prerequisite to the removal from a distillery of "brandy distilled from fruit, is that the tax-paid stamps must be affixed before the removal, and as this was done in this case, I cannot see in what respect the removal was illegal. But as the tax-paid stamp could not be affixed until the tax was paid, and as the tax could not be paid until the amount due was ascertained, and as the amount could not be ascertained until the gauger had gauged and proved the spirits, it might be insisted that brandy cannot be lawfully removed from a distillery until it has been gauged and proved nor until the tax has been paid on it, though it has the tax-paid stamps affixed. This might be conceded, but the concession would avail nothing in this case. The spirits in controversy were, before removal, gauged and proved; the tax was paid on them and the tax-paid stamps were affixed. They have thus complied with every provision of the statute from which they are not exempt, and with every regulation governing their removal. It follows that they are not forfeited for the cause alleged in the first count.

The second count is founded on the ninth section of the act of the 13th of July, 1866 (14 Stat. 98), but as there is no evidence to sustain the allegations of the count it is not necessary to state either them or the statute on which they are founded.

The third count is founded on the ninety-sixth section of the act of July 20, 1868 (15 Stat. 125), in connection with the twenty-third and twenty-fifth sections of the same act. This count alleges in substance that said distilled thirty-seven barrels of spirits were on the first of November, 1869, owned by a distiller whose name is to the district attorney unknown, who had theretofore distilled the same and placed them in certain casks containing more than twenty gallons wine measure each, and the said distiller did then and there knowingly omit, neglect and refuse to have said spirits gauged, proved and marked by an internal revenue gauger, and to have cut or burned upon the casks which contained the said spirits the name of the distiller, the district, the date of the payment of the tax, the quantity of wine gallons and proof gallons of the contents of such casks, and the number of the tax-paid stamp, before the said spirits were removed from the distillery, as required by the twenty-third and twenty-fifth sections of the act of July 20, 1868, and general regulations prescribed by the commissioner of internal revenue. The ninety-sixth section provides "that if any distiller * * * of liquors * * * shall knowingly and willfully omit, neglect or refuse to do or cause to be done any of the things required by law in carrying on or conducting of his business, or shall do anything by this act prohibited, * * * all distilled spirits or liquors owned by him, or in which he has any interest as owner, shall be forfeited to the United States." I waive the consideration of the question whether this count is good as it contains no averment that the omission or neglect was willful, because I am satisfied it cannot be claimed that a distiller, within the meaning of this section, omits, neglects or refuses to do or cause to be done anything which the law does not require him but some other person to do. Now the testimony in this case does not show that the distiller omitted, neglected or refused to do or cause to be done, anything enjoined on him to do or cause to be done, by the twenty-third or twenty-fifth section of the act, or, in fact, by any other section. What was omitted, I have before stated, when considering the first count, and it will be seen by reference to the said sections, that the things omitted are required to be done, not by the distiller, but by the gauger. The law nowhere requires the distiller to cut or burn, or to cause to be cut or burned, on his casks containing spirits, his name, the name of the district, the date of payment of tax, the quantity of wine or proof gallons, or the number of tax-paid stamp. All of these marks are required by either the twenty-third or the twenty-fifth section to be put on by the internal revenue gauger.

The district attorney has asked leave to file an amended information claiming a forfeiture under the fifty-seventh section of the above-mentioned act of 1868. This section after prescribing the duty of persons owning or having in their possession distilled spirits intended for sale, exceeding in quantity fifty gallons, and not in a bonded warehouse at the time when the act should take effect, to make return of the same to the collector of the district, and after prescribing how such casks containing such spirits should be marked, contains this further provision: "Any person owning or having in possession such spirits and refusing or neglecting to make such returns shall forfeit the same; and all distilled spirits found after thirty days from the time that this act takes effect, in any cask or package containing more than five gallons, without having thereon each mark and stamp required therefor by this act, shall be forfeited to the United States." If I thought there was a clear case of forfeiture under this provision, I would, in accordance with the settled practice of the court, allow the amendment to be filed. That part of this provision which declares a forfeiture for the neglect or refusal to make a return most indubitably refers to spirits on hand and not in a bonded warehouse at the time the act went into effect. The terms "such spirits" and "such return" leave no room for doubt on this subject; and, in my opinion, the remain-

ing portion of the provision likewise refers to such spirits. True, it declares that all distilled spirits found * * * in any cask containing more than five gallons, without having thereon each mark and stamp required therefor by this act, shall be forfeited; but the limitation, "found after thirty days from the time this act takes effect," shows that the spirits referred to are those which were on hand, and which were not in a bonded warehouse at the time the act took effect. These spirits the owner is allowed thirty days to have marked and stamped. Besides, although the language of this provision is somewhat general, and might be applied to all distilled spirits literally, the connection in which it is found limits its application to the spirits mentioned in the section. As to distilled spirits generally, other sections of the statute must be consulted to ascertain the duties of distillers and of others respecting them, and the forfeitures denounced against them. This section is confined by its spirit and terms to spirits intended for sale on hand when the act took effect, but which were not in a bonded warehouse. As the spirits in controversy are not such as the provisions of this section refer to, as they have been manufactured since the passage of the act of 1868, the amendment is not allowed to be filed.

Finally, I may repeat what I have often said before, that though the revenue statutes are not to be construed with the same strictness which is applied to criminal and penal laws generally, I am not willing to adjudge either a punishment against the person of the citizen or a forfeiture of his property unless the law explicitly requires it. "It is the province of the legislature to declare in explicit terms how far the citizen shall be restrained in the exercise of that power over property ownership gives; and it is the province of the court to apply the rule (only) to the case thus explicitly described." Schooner Pauline's Cargo v. U. S., 7 Cranch [11 U. S.] 61.

I have some doubt whether all of the opinions herein announced are correct, but being entirely satisfied that no forfeiture is explicitly declared by the act for any of the matters alleged, I shall decide that the claimants have made good their claim, and order a restoration of the brandy, but I shall also order a certificate of probable cause to be given to the seizing officer.